ASA W. PARKER, Respondent, *v.* ALEXANDER McLEAN,
Impleaded, etc., Appellant.

P. foreclosed a mortgage upon certain real estate owned by O. and bid in
the premises on the sale; he then agreed with O. that the latter might
exchange the property and have all he could realize after paying plain-
tiff's claim, O. effected an exchange with E. for certain personal prop-
erty, upon which was a chattel mortgage, E. to pay plaintiff's claim.
E. gave to O. her promissory note, indorsed for her accommodation by
defendant McL. to be used, as defendant's evidence tended to show' for
the purpose of raising money to pay the chattel mortgage.  O. gave to
E. a chattel mortgage to secure a balance on the exchange.  O. indorsed
and delivered the note to plaintiff receiving the amount in cash less the
discount and a small amount applied on an indebtedness to plaintiff.  Of
the money paid, $600 was applied on the mortgage.  In an action upon
the note, defendant's evidence was to the effect that plaintiff had
knowledge when he took the note, of the purpose for which it was
given.  The case was tried by defendant upon the theory that plain-
tiff was not entitled to recover anything.  Judgment was directed
for the amount of money paid thereon by plaintiff.  *Held* (BRADLEY,
VANN and HAIGHT, JJ., dissenting), no error.

(Argued May 4 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of City Court
of Brooklyn, entered upon an order made December 20, 1890,
which affirmed a judgment in favor of the plaintiff, entered
upon a verdict directed by the court and affirmed an order
denying a motion for a new trial.

This was an action upon a promissory note.

The facts. so far as material, are stated in the opinion.

*Horatio C. King* for appellant.

*N. C. Moak* for respondent.

FOLLETT, Ch. J.   In 1889 Sampson B. Oulton owned real
estate in Brooklyn, subject to a mortgage held by Asa W.
Parker, which was foreclosed, and on the sale the mortgagee
purchased the property.   Parker agreed with Oulton that the
latter might exchange the property and have all he could

realize out of it after paying the debt. Miss Evelyn P. Everett was the lessee of the Hotel Everett, in the city of New York, and owned the furniture and certain other property connected therewith. In July of that year Oulton and Miss Everett agreed to exchange their properties free from all encumbrances. When they met to affect the exchange it appeared that there was a chattel mortgage on Miss Everett's property for $2,000 which did not become due until the following August, and could not at the date of the exchange be conveniently paid. It also appeared that the taxes in arrear upon the Brooklyn real estate amounted to $871.14, which deducted from $2,000, the amount of the chattel mortgage, left $1,128.86 difference, which Miss Everett was required to pay or secure to be paid to Oulton. This being done Miss Everett took the Brooklyn real estate, subject to $871.14 due for taxes, and Oulton the Everett House property, subject to the chattel mortgage for $2,000. To secure the payment of $1,128.86, the difference between the encumbrances, Miss Everett on July 18, 1889, gave her promissory note by which she promised to pay to her own order, $1,128.86, four months after date at Long Island Bank. Miss Everett indorsed the note and Alexander McLean also indorsed it for the accommodation of the maker, and it was then delivered to Oulton, who July twenty-first, indorsed and delivered it to the plaintiff, who advanced $300 to enable Oulton to pay rent in arrear on the hotel property, and about September first advanced $750, making $1,050 paid in cash for the note. The remainder, $78.86, less the discount for the time the note had to run, was applied on an indebtedness of Mrs. Oulton to the plaintiff. The plaintiff testified, and in this he was uncontradicted, that the father of Miss Everett and her agent was present when the $300 was paid. This action was brought against the maker and both indorsers to recover the amount due upon the note. McLean alone defended upon the ground that his indorsement was for the accommodation of the maker, and was known to be by Oulton and the plaintiff, and that the note was made and indorsed for the purpose of paying the chattel mortgage for $2,000 given by Miss Everett,

but was wrongfully diverted by Oulton and the plaintiff from that purpose. It is conceded that $600 of the avails of the note were paid on the chattel mortgage. At the close of the evidence a verdict was directed for the plaintiff for $1,050, the amount which he advanced on the note, which was $111.13 less than the amount due thereon. The defendant excepted to the direction and to the refusal of the court to submit to the jury: (1) Whether it was agreed to the plaintiff's knowledge, that the note or its avails was to be applied in payment of the chattel mortgage. (2) Whether the plaintiff was a *bona fide* holder of the note. These are the only exceptions discussed in behalf of the appellant. It is undisputed that $600 received from the plaintiff by Oulton were paid on the chattel mortgage. To that sum there was no defense. The defendant did not indorse the note in the presence of the plaintiff, and the condition upon which he says he indorsed it was not stated in the presence of the plaintiff or made known to him. The defendant indorsed the note which was presented to him by Wood, who alone was present when the condition was imposed, and it is not claimed that what the defendant said to Wood was brought to the knowledge of plaintiff. The evidence on the part of the defendant does show that it was agreed between Miss Everett and her father on the one side, and Mr. and Mrs. Oulton on the other, that the avails of the note were to be used in payment of the mortgage. The restriction which the Everetts imposed upon the use of the note could be waived by them, and it appears, as above stated, that Mr. Everett was present when the $300 was advanced by the plaintiff on the note. Had the question been raised that the plaintiff was not entitled to recover that sum, but only the sum which he subsequently advanced, he might have shown a consent that the $300 might be used for other purposes. The case was tried upon the theory that the plaintiff was not entitled to recover anything, and not that the defendant had established a partial defense. The defendant asked to go to the jury upon the theory that evidence had been given which, if believed, would sustain a verdict of no cause of action, but there was no such

evidence. The learned counsel for the defendant does not urge in his brief that the judgment is erroneous in part and should be modified, but insists that it should be wholly reversed. The weight of the evidence is so greatly in favor of the plaintiff and against the defendant that the judgment should be sustained, unless the appellant points out a vital error committed by the trial court, to which his attention was called. This, we think, he has failed to do.

The judgment should be affirmed, witn costs.

BRADLEY, J. (dissenting). The note in question was the product of a transaction between the defendants Everett and Oulton, by which she exchanged with him the personal property in the Hotel Everett in the city of New York for certain real estate in the city of Brooklyn. It appeared that the plaintiff had foreclosed a mortgage on the Brooklyn property and became the purchaser at the sale, and advised Oulton, the former owner, that he might, if he could trade the property, have the benefit of it, subject to plaintiff's claim, and that the latter would at his instance convey it accordingly. Oulton entered into an agreement with Miss Everett to exchange the property subject to such claim with her for her personal property in the Hotel Everett and her lease of the hotel. And as there was a mortgage upon her property there of two thousand dollars, it was arranged that she should give him her note with an indorser for that amount. The note was accordingly made by her and indorsed by McLean. But before the transaction was closed it was ascertained that there were taxes existing against the Brooklyn property amounting to about eight hundred and seventy dollars, and it was thereupon arranged that the two thousand dollar note should be reduced the amount of such taxes. The note sued upon was then made in the place of the other and indorsed by McLean, and the trade was consummated. The defendant gave evidence tending to prove that the purpose of the note and the understanding and agreement upon which it was made and indorsed, were that it or its proceeds should be used in paying the mortgage on the prop-

erty in the hotel, and that such purpose and agreement were understood by the plaintiff as well as by Oulton, at the time the note was made. The evidence on the part of the plaintiff was to the contrary of that on the part of the defendant in respect to the purpose for which the note was made. The note was taken by Oulton, and afterwards he obtained from the plaintiff upon it three hundred dollars, and later seven hundred and fifty dollars more. And he testified that when he obtained from the plaintiff the first sum he informed him that the purpose for which he wanted it was to pay back rent on the Hotel Everett amounting to $351.70, and that he obtained and used the money for that purpose. The trial court refused to submit to the jury the questions whether the alleged agreement in respect to the purpose of the note and its indorsement, was made, and whether the plaintiff was a holder of it in good faith, and directed a verdict for the plaintiff for $1,050. And upon the exceptions taken to such refusal and direction the questions presented for consideration arise.

The mere fact that the defendant McLean was an accommodation indorser does not aid the defense. But if, as claimed by him, the note was made and by him indorsed pursuant to an agreement that its use should be devoted to the payment of the chattel mortgage upon the property, which the maker had exchanged with Oulton for the Brooklyn premises, then such arrangement may have been effectual as against a person other than a *bona fide* holder, seeking to enforce its collection in case a diversion had with his knowledge and consent been made of it from such specific purpose, provided the maker might possibly be benefited by the performance of the condition and prejudiced by the failure to observe and effectuate such purpose. In such case the arrangement does not qualify the terms of the note, nor is it inconsistent with the undertaking of the parties as by it expressed to pay, but has relation to the object to which the note or its proceeds are to be appropriated, and constitutes a condition in that respect upon which it is made, delivered and accepted. And for that purpose the matter may be the subject of inquiry by evidence against any other than a

*bona fide* holder of the paper. (*Burton* v. *Martin*, 52 N. Y. 570; *Bookstaver* v. *Jayne*, 60 id. 146; *Potts* v. *Mayer* 74 id. 594.)

In the present case there was no understanding with the holders of the mortgage or otherwise that they would take the note or that it should be tendered or delivered to them. It seems that the mortgage became due before the maturity of the note. While these circumstances may have a bearing upon the question of fact presented upon the conflict of evidence, they do not necessarily preclude the inference from the agreement, if found to have been so made, that the proceeds of the note were to be obtained and made available for and applied to the alleged purpose. In that view, as the note was delivered to Oulton for the purpose for which it was made and indorsed, it would seem to have been contemplated that he would receive or obtain the money upon it and make its application upon the mortgage; and consequently any person who should take the note from him with knowledge of its purpose and advance the money upon it to Oulton, would not be affected by the charge of the diversion by him of the fund, unless such person at the time he made the advance and took the note was advised or understood it was to be so diverted. There is evidence tending to prove that the first application to the plaintiff for an advance of money upon the note was for a purpose other than payment upon the mortgage, and that the advance of three hundred dollars was expressly made by him to Oulton to use for such other purpose. Assuming that this was a diversion in violation of the condition upon which the note was delivered to and taken by Oulton, and that the plaintiff then had knowledge of such restriction upon the use of the proceeds of it, he was, so far as related to the title to the note and the liability upon it of the maker and indorser, in like manner affected by the diversion of the money so advanced by him for and appropriated to such other purpose. But it is essential that the maker or indorser had some interest in having the proceeds of the note paid and applied upon the mortgage, which was the first one on the property, for unless there was a possibility of

prejudice to those persons, or one of them, by the diversion of such proceeds from it, there would seem to be no reason for the effectual support of the alleged condition as a defense. The interest, so far as appears, of the maker of the note in the observance of such condition, was in the fact that she took from Oulton, at the time of the transaction, a mortgage of $10,500 upon the property covered by the chattel mortgage before mentioned. And thus she may have had an interest in having the property relieved from the lien of the prior mortgage. Nor can it be held that the performance of the condition would have been of no possible advantage to the indorser McLean by way of protection or reimbursement of him as such. But there is evidence tending to prove that he was a party to the agreement so far that his indorsement was made upon the condition before mentioned in respect to the use which should be made of the note or its proceeds. The views of the court in *Bookstaver* v. *Jayne*, so far as relates to the defense of the indorser, are applicable to the present case. The mortgage in question was not paid by Oulton, but was foreclosed, and it may be assumed that all the rights afforded by the mortgage made by him to Miss Everett on the property were cut off by such foreclosure.

It is urged that the weight of evidence so dominated in support of the verdict that if any other than that directed had been rendered, it would have been the duty of the court to set it aside. While it is true that the burden was with the defendant to establish the alleged defense, the evidence conflicting as it appears, is not such as to warrant that conclusion on this review. In the view taken, however, the evidence, as it now appears in the record, does not warrant the inference that any of the money advanced by the plaintiff to Oulton upon and for the note other than the three hundred dollars, was made for the purpose of its diversion, or with any knowledge or consent of the plaintiff that it would be diverted to or used for any purpose other than in performance of the alleged condition.

These views lead to the conclusion that the judgment should be reversed and a new trial granted, costs to abide the event,

unless the plaintiff stipulate to deduct from the judgment entered on the verdict as of the time of its entry three hundred dollars, and in that event the judgment be so modified, and as modified affirmed without costs in this court to either party.

All concur with FOLLETT, Ch. ., except BRADLEY, VANN and HAIGHT, JJ., dissenting.

Judgment affirmed.